## In The United States Bankruptcy Court
## For The Western District of Texas
## San Antonio Division

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Gabriel Investment Group, Inc., et al., | § | Bankruptcy No. 19-52298 |
| | § | |
| Debtors | § | Joint Administration Requested |

---

**Debtor's Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 363, and 507 and Federal Rules of Bankruptcy Procedure 4001 and 9014: (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection, including Replacement Security Interests and Superpriority Claims**

---

To the Honorable United States Bankruptcy Judge:

Gabriel Investment Group, Inc., et al., ("Debtors" or "Gabriel's")[1], by and through their proposed counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Debtor's Motion for Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 363, and 507 and Federal Rules of Bankruptcy Procedure 4001 and 9014: (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection, including Replacement Security Interests and Superpriority Claims* (the "Motion"). In support of the Motion, Debtors respectfully represent as follows:

## I. JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On September 27, 2019 (the "Petition Date"), Debtors filed voluntary petitions under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

---

[1] The term "Debtors" as used herein shall mean Gabriel Investment Group, Inc. ("GIG"), Gabriel GP, Inc. ("GP"), Gabriel Holdings, LLC ("Gabriel Holdings"), Don's & Ben's. Inc. ("D&B"), and SA Discount Liquor, Inc. ("Discount Liquor") collectively.

"Bankruptcy Code").

3.     Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in these Cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed.

4.     The statutory predicates for the relief requested herein are Sections 105, 361, 363, and 507 of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

5.     Attached hereto as Exhibit A is the proposed order on the Motion.

## II.   <u>FACTUAL BACKGROUND</u>

6.     Gabriel's has been a San Antonio institution since 1948. The Gabriel family has managed a chain of South Texas package stores that over the course of two or three generations grew to become a well-known community mainstay, one that today employs approximately 250 individuals across the region. Throughout its history Gabriel's has supplied the citizens of San Antonio with fine wines, high quality liquors, and exceptional beers at reasonable prices. It has also been a bastion of the San Antonio community through its involvement in various events all over the city, including Fiesta, as well as its involvement with various non-profits raising money to support the region's less fortunate. Today, Gabriel's operates 15 package store locations as Gabriel's Liquor and 30 package store locations as Don's & Ben's Liquor.

7.     While competition is a challenge for any business, beginning in 2013 Gabriel's began facing increased competition from the influx of big-box retailers. These changes in the San Antonio market gradually caused several of Gabriel's locations to become unprofitable. Additionally, Gabriel's wholesale business started to suffer losses due to the

increased competition. The Gabriel family did its best to manage the operations to address this economic turmoil; however, the losses continued to mount.

8. In 2019, the Gabriel family considered merging Gabriel's with a Texas retailer that had the financial resources to weather the tougher competition in San Antonio. Unfortunately, even though the discussions proceeded to the point of setting a closing date, the merger ultimately fell through. During that same time, Gabriel's failed to timely pay its vendors, which led to Gabriel's being placed on the Texas Alcoholic Beverage Commission ("TABC") Delinquent List. Pursuant to TABC regulations, placement on the TABC Delinquent List prohibits all liquor wholesalers from selling to Gabriel's.

9. Gabriel's line of credit with its lender PNC Bank, National Association expires on September 30, 2019.

10. Gabriel's has sought bankruptcy protection to reorganize its business model and return to profitability. Prior to the Petition Date, Gabriel's ceased its wholesale operations. As part of these Bankruptcy Cases, Gabriel's intends to close the unprofitable locations while focusing on those locations that have been high-performing for Gabriel's throughout its history. Gabriel's will also work with its creditors to propose a plan of reorganization that will allow it to pay its creditors in full while preserving the positive cash flow that is so critical to continued operation of the package stores.

11. On or about September 30, 2014, Debtors, as Borrowers, and PNC Bank, National Association ("PNC"), as Lender, entered into that specific Revolving Credit, Term Loan and Security Agreement (the "Loan Agreement"), whereby Debtors borrowed funds in the principal amount of $3,000,000.00 under a Term Note and entered into a Revolving Credit Note authorizing Debtors to borrow up to $14,000,000

12.     As of the Petition Date, Debtors were indebted to PNC in the amount of $6,381,261.19 under the Revolving Credit Note (the "PNC Claim"), plus fees, costs, expenses and attorney's fees incurred as of the Petition Date to the fullest extent authorized and/or permitted under the Loan Documents (as hereinafter defined) and applicable law. The Pre-Petition Claim constitutes a legal, valid and binding obligation of Debtors that is enforceable in accordance with the terms of the Loan Documents (as hereinafter defined) and applicable law.

13.     The PNC Claim is secured by, among other things, first priority, valid and perfected liens and security interests (collectively, "PNC's Liens") in substantially all of the Debtors' assets, including, but not limited to, all existing and after acquired accounts, credit card receivables, deposit accounts, letter of credit rights, chattel paper, accounts receivable, inventory, goods, furniture, fixtures, equipment, machinery, general intangibles, instruments, documents, contracts, choses in action, claims, and causes of action (including commercial tort claims) as more specifically set forth in the Loan Documents any fixtures attached thereto, including any proceeds generated therefrom (collectively, the "Pre-Petition Collateral").[2] PNC's Claim, pursuant to Section 552(b) of the Bankruptcy Code, is also secured by security interests and liens in all post-petition revenues in any way related to the Pre-Petition Collateral, and all related proceeds and profits therefrom, which is Cash Collateral (as hereinafter defined), whether now in the Debtors' (or persons in  privity with the Debtors) possession, custody, or control, or in which the Debtors will obtain an interest during the pendency of these Cases, and all other Cash Collateral (as hereinafter defined) within the meaning of Section 363(a) of the Bankruptcy Code (collectively with the Pre-Petition Collateral and the Post-Petition Collateral (as hereinafter defined), the

---

[2] The description of the Pre-Petition Collateral set forth herein is not intended to be all inclusive and is subject to the more complete description of the Pre-Petition Collateral set forth in the Loan Documents.

"Collateral").

14.     PNC's Cash Collateral is comprised of all cash and cash equivalents of the Debtors' bankruptcy estate (as defined in Sections 363(a) and/or 552 of the Bankruptcy Code), whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, tariffs, governmental rentals, or in any other form, including, but not limited to, all revenues, other income, proceeds, rents or profits of the Collateral, wherever located, that is now in the possession, custody or control of Debtors, or in which Debtors will obtain an interest during the pendency of these Cases (collectively, "Cash Collateral").[3]

15.     PNC's Claim and PNC's Liens are evidenced by certain Loan Documents (as hereinafter defined) between the Debtors and PNC.  PNC is the current owner and holder of such Loan Documents, which are more specifically described as follows, without limitation:

a.      that certain Revolving Credit, Term Loan and Security Agreement between the Debtors, as Borrowers, and PNC Bank, National Association, as Lender, dated as of September 30, 2014 (the "Loan Agreement")

b.      that certain Term Note in the principal amount of $3,000,000.00 dated as of September 30, 2014, executed by the Debtors for the benefit of PNC;

c.      that certain Revolving Credit Note in the principal amount of $14,000,000.00 dated as of September 30, 2014, executed by the Debtors for the benefit of PNC;

d.      that certain PNC Bank, National Association Subordination Agreement dated as of September 30, 2014, executed by the Debtors, as Borrowers, Johnny D. Gabriel, Sr., as Subordinate Lender and PNC, as Senior Lender;

e.      that certain UCC-1 Financing Statement from Gabriel Investment Group, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247133;

---

[3] For purposes of this Motion, "proceeds" of any of the Collateral shall mean "Proceeds," as defined in the Uniform Commercial Code, of such Collateral.

f.      that certain UCC-1 Financing Statement Amendment from Gabriel Investment Group, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166923;

g.      that certain UCC-1 Financing Statement from Gabriel GP, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247496;

h.      that certain UCC-1 Financing Statement Amendment from Gabriel GP, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166882;

i.      that certain UCC-1 Financing Statement from Gabriel Holdings, LLC in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247254;

j.      that certain UCC-1 Financing Statement Amendment from Gabriel Holdings, LLC in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166885;

k.      that certain UCC-1 Financing Statement from Don's & Ben's Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247012;

l.      that certain UCC-1 Financing Statement Amendment from Don's & Ben's Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166925;

m.      that certain UCC-1 Financing Statement from SA Discount Liquor, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247517;

n.      that certain UCC-1 Financing Statement Amendment from SA Discount Liquor, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166924; and

o.      all other documents relating to the foregoing documents and agreements

(collectively, the "Loan Documents").

16.      In connection with filing the Motion, Debtors have prepared a 15-week budget demonstrating the use of Cash Collateral during that time period. Attached hereto as Exhibit B is a true and correct copy of the Proposed Budget.

### III.   RELIEF REQUESTED

17.     By this Motion, Debtors request entry of an interim and final order authorizing Debtors to use the Cash Collateral pursuant to the attached Proposed Budget.   Additionally, Debtors request that the Court establish that the adequate protection offered by Debtors to PNC, as outlined in the Motion, is sufficient under 11 U.S.C. § 361.

### IV.   AUTHORITIES AND ARGUMENTS

#### A.  The Court Should Authorize the Use of Cash Collateral

18.     Debtors require use of the Cash Collateral to pay the expenses associated with the operation of their package store locations, as well as providing adequate protection payments to PNC.  If the Debtors cannot use the Cash Collateral, the Debtors would be unable to maintain the ongoing operations during the course of the Bankruptcy Cases, which would be detrimental to proposing a plan of reorganization in these Cases.  As set forth on Exhibit B, the Proposed Budget provided by Debtors encompasses the routine operation of the package stores.  Debtors believe these expenses are reasonable and necessary to insure that the value of the entire business will not deteriorate during the course of these Cases.

19.     Bankruptcy Code section 363(c)(2) provides that the Debtors may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  Bankruptcy Code section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest.  While PNC has not consented to the use of the Cash Collateral, Debtors are seeking to provide adequate protections that are standard in many of the cases filed before this Court.  Debtors will continue to negotiate with PNC on an

agreed order to use the Cash Collateral, but in any event the proposed use of the Cash Collateral is reasonable and necessary to sustain the operations of the Debtors and preserve the value of the ongoing business operations.

### B. Approval of Adequate Protection

20.     Under Bankruptcy Code section 361, when adequate protection is required under Bankruptcy Code section 363 to protect against any diminution in value of an interest of an entity in property, a debtor may provide additional or replacement liens to the prepetition secured creditor.  11 U.S.C. §361(2).  The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987).  Adequate protection can be provided in a number of ways (*see, e.g.*, 11 U.S.C. §361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. at 631 (purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest" during the Chapter 11 reorganization).

21.     In exchange for the Debtors' use of the Cash Collateral, Debtors would propose adequate protection payments to PNC equal to the contractual interest at the non-default rate (in the amount of $35,000) during the course of the Cases.

22.     Debtors will also agree that PNC shall have valid first-priority replacement and additional liens and security interests, with priority over all other liens and security interests, save and except for the ad valorem tax liens of any Texas taxing authority, in and upon any and all assets of Debtors, including, but not limited to, the Collateral, Cash Collateral and all assets described as Collateral in the Loan Documents. Such replacement liens shall be automatically perfected without necessity to any further filing by PNC.

23.     As additional adequate protection, to the extent applicable, PNC shall be granted an allowed super-priority administrative expense claim as set forth under § 364(c)(1) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under Sections 507(b) and 503(b) of the Bankruptcy Code, to the extent of any diminution in the value of PNC's interest in the Collateral and Cash Collateral.  PNC shall also be granted all of the other benefits and protections allowable under Sections 503(b) and 507(b) of the Bankruptcy Code.

24.     As further adequate protection, the Debtors shall pay the reasonable fees and expenses of PNC, whether incurred before or after the Petition Date, as set forth in the applicable Loan Documents, without further notice, motion, or application to, order of, or hearing before, the Court; provided, however, that in connection with any PNC request for reimbursement of fees, PNC shall submit a summary statement of the time and amounts subject to such reimbursement request to the Debtors, the U.S. Trustee, and counsel for any Committee, and such parties shall have fourteen (14) days following the receipt of such statements to object to the reasonableness of the fees and expenses included in any such statements.   If no objection is received within such fourteen (14) day period, the Debtors are authorized to pay the fees and expenses requested, without further notice or Court order.  The automatic stay under 11 U.S.C. § 362(a) is hereby modified to the extent necessary to permit PNC to receive and apply the payments as provided for hereunder.

25.     Debtors request that the Court conduct an interim hearing to consider the relief requested in the Motion, as soon as possible, so that Debtors may maintain operations pending approval of a final order.  Debtors expect that the final form of order will be substantially in the same form as Exhibit A attached hereto.

## V.     <u>WAIVER OF BANKRUPTCY RULES 6003, 6004(a) AND 6004(h)</u>

26.    Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm[.]" Fed. R. Bankr. P. 6003(b). For the reasons described herein, Debtors submit that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtors and their estates. To implement the foregoing successfully, Debtors seek a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extend these rules are applicable.

## VI.     <u>NO PRIOR REQUEST</u>

27.    No prior request for the relief sought in this Motion has been made to this or any other court.

## VII.     <u>NOTICE</u>

28.    Debtors have caused a copy of this Motion to be served upon (i) the proposed Limited Service List, which includes the prepetition lenders and their counsel and the consolidated list of the top twenty (20) largest unsecured creditors of Debtors; (ii) the United States Trustee; (iii) those persons who have formally appeared in these Cases and requested service pursuant to Bankruptcy Rule 2002; and (iv) all applicable government agencies to the extent required by the Bankruptcy Local Rules. Debtors submit that no other or further notice need be provided.

WHEREFORE, Debtors respectfully request that the Court enter an Order authorizing Debtors to (a) use Cash Collateral as set forth in the Proposed Budget, (b) provide adequate protection to PNC and (c) for such other and further relief to which Debtor may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Thomas Rice*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Thomas Rice
    Texas State Bar No. 24025613
    trice@pulmanlaw.com
    Amber L. Fly
    Texas State Bar No. 24101761
    afly@pulmanlaw.com

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESION**

# EXHIBIT A

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| GABRIEL INVESTMENT GROUP, INC., ET AL., | § | BANKRUPTCY NO. 19-52298 |
| | § | |
| DEBTORS | § | JOINT ADMINISTRATION REQUESTED |

---

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001 AND 9014: (I) AUTHORIZING THE USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION, INCLUDING REPLACEMENT SECURITY INTERESTS AND SUPERPRIORITY CLAIMS**

---

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Gabriel Investment Group, Inc., et al., ("Debtors" or "Gabriel's")[1], by and through their proposed counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Debtor's Motion for Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 363, and 507 and Federal Rules of Bankruptcy Procedure 4001 and 9014: (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection, including Replacement Security Interests and Superpriority Claims* (the "Motion"). In support of the Motion, Debtors respectfully represent as follows:

## I.     JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On September 27, 2019 (the "Petition Date"), Debtors filed voluntary petitions under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

---

[1] The term "Debtors" as used herein shall mean Gabriel Investment Group, Inc. ("GIG"), Gabriel GP, Inc. ("GP"), Gabriel Holdings, LLC ("Gabriel Holdings"), Don's & Ben's. Inc. ("D&B"), and SA Discount Liquor, Inc. ("Discount Liquor") collectively.

{00441214}

"Bankruptcy Code").

3.      Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in these Cases by the United States Trustee.  Further, no trustee or examiner has been requested or appointed.

4.      The statutory predicates for the relief requested herein are Sections 105, 361, 363, and 507 of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

5.      Attached hereto as Exhibit A is the proposed order on the Motion.

## II.      FACTUAL BACKGROUND

6.      Gabriel's has been a San Antonio institution since 1948.  The Gabriel family has managed a chain of South Texas package stores that over the course of two or three generations grew to become a well-known community mainstay, one that today employs approximately 250 individuals across the region. Throughout its history Gabriel's has supplied the citizens of San Antonio with fine wines, high quality liquors, and exceptional beers at reasonable prices.  It has also been a bastion of the San Antonio community through its involvement in various events all over the city, including Fiesta, as well as its involvement with various non-profits raising money to support the region's less fortunate.  Today, Gabriel's operates 15 package store locations as Gabriel's Liquor and 30 package store locations as Don's & Ben's Liquor.

7.      While competition is a challenge for any business, beginning in 2013 Gabriel's began facing increased competition from the influx of big-box retailers.  These changes in the San Antonio market gradually caused several of Gabriel's locations to become unprofitable.  Additionally, Gabriel's wholesale business started to suffer losses due to the

increased competition.  The Gabriel family did its best to manage the operations to address this economic turmoil; however, the losses continued to mount.

8.      In 2019, the Gabriel family considered merging Gabriel's with a Texas retailer that had the financial resources to weather the tougher competition in San Antonio.  Unfortunately, even though the discussions proceeded to the point of setting a closing date, the merger ultimately fell through.  During that same time, Gabriel's failed to timely pay its vendors, which led to Gabriel's being placed on the Texas Alcoholic Beverage Commission ("TABC") Delinquent List.  Pursuant to TABC regulations, placement on the TABC Delinquent List prohibits all liquor wholesalers from selling to Gabriel's.

9.      Gabriel's line of credit with its lender PNC Bank, National Association expires on September 30, 2019.

10.      Gabriel's has sought bankruptcy protection to reorganize its business model and return to profitability.  Prior to the Petition Date, Gabriel's ceased its wholesale operations. As part of these Bankruptcy Cases, Gabriel's intends to close the unprofitable locations while focusing on those locations that have been high-performing for Gabriel's throughout its history.  Gabriel's will also work with its creditors to propose a plan of reorganization that will allow it to pay its creditors in full while preserving the positive cash flow that is so critical to continued operation of the package stores.

11.      On or about September 30, 2014, Debtors, as Borrowers, and PNC Bank, National Association ("PNC"), as Lender, entered into that specific Revolving Credit, Term Loan and Security Agreement (the "Loan Agreement"), whereby Debtors borrowed funds in the principal amount of $3,000,000.00 under a Term Note and entered into a Revolving Credit Note authorizing Debtors to borrow up to $14,000,000

12.     As of the Petition Date, Debtors were indebted to PNC in the amount of $6,381,261.19 under the Revolving Credit Note (the "PNC Claim"), plus fees, costs, expenses and attorney's fees incurred as of the Petition Date to the fullest extent authorized and/or permitted under the Loan Documents (as hereinafter defined) and applicable law. The Pre-Petition Claim constitutes a legal, valid and binding obligation of Debtors that is enforceable in accordance with the terms of the Loan Documents (as hereinafter defined) and applicable law.

13.     The PNC Claim is secured by, among other things, first priority, valid and perfected liens and security interests (collectively, "PNC's Liens") in substantially all of the Debtors' assets, including, but not limited to, all existing and after acquired accounts, credit card receivables, deposit accounts, letter of credit rights, chattel paper, accounts receivable, inventory, goods, furniture, fixtures, equipment, machinery, general intangibles, instruments, documents, contracts, choses in action, claims, and causes of action (including commercial tort claims) as more specifically set forth in the Loan Documents any fixtures attached thereto, including any proceeds generated therefrom (collectively, the "Pre-Petition Collateral").[2] PNC's Claim, pursuant to Section 552(b) of the Bankruptcy Code, is also secured by security interests and liens in all post-petition revenues in any way related to the Pre-Petition Collateral, and all related proceeds and profits therefrom, which is Cash Collateral (as hereinafter defined), whether now in the Debtors' (or persons in privity with the Debtors) possession, custody, or control, or in which the Debtors will obtain an interest during the pendency of these Cases, and all other Cash Collateral (as hereinafter defined) within the meaning of Section 363(a) of the Bankruptcy Code (collectively with the Pre-Petition Collateral and the Post-Petition Collateral (as hereinafter defined), the

---

[2] The description of the Pre-Petition Collateral set forth herein is not intended to be all inclusive and is subject to the more complete description of the Pre-Petition Collateral set forth in the Loan Documents.

"Collateral").

14.     PNC's Cash Collateral is comprised of all cash and cash equivalents of the Debtors'

bankruptcy estate (as defined in Sections 363(a) and/or 552 of the Bankruptcy Code), whether in

the form of cash, negotiable instruments, documents of title, securities, deposit accounts, tariffs,

governmental rentals, or in any other form, including, but not limited to, all revenues, other

income, proceeds, rents or profits of the Collateral, wherever located, that is now in the possession,

custody or control of Debtors, or in which Debtors will obtain an interest during the pendency of

these Cases (collectively, "Cash Collateral").[3]

15.     PNC's Claim and PNC's Liens are evidenced by certain Loan Documents (as

hereinafter defined) between the Debtors and PNC.  PNC is the current owner and holder of such

Loan Documents, which are more specifically described as follows, without limitation:

    a.     that certain Revolving Credit, Term Loan and Security Agreement between the Debtors, as Borrowers, and PNC Bank, National Association, as Lender, dated as of September 30, 2014 (the "<u>Loan Agreement</u>")

    b.     that certain Term Note in the principal amount of $3,000,000.00 dated as of September 30, 2014, executed by the Debtors for the benefit of PNC;

    c.     that certain Revolving Credit Note in the principal amount of $14,000,000.00 dated as of September 30, 2014, executed by the Debtors for the benefit of PNC;

    d.     that certain PNC Bank, National Association Subordination Agreement dated as of September 30, 2014, executed by the Debtors, as Borrowers, Johnny D. Gabriel, Sr., as Subordinate Lender and PNC, as Senior Lender;

    e.     that certain UCC-1 Financing Statement from Gabriel Investment Group, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247133;

---

[3] For purposes of this Motion, "<u>proceeds</u>" of any of the Collateral shall mean "<u>Proceeds</u>," as defined in the Uniform Commercial Code, of such Collateral.

f.  that certain UCC-1 Financing Statement Amendment from Gabriel Investment Group, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166923;

g.  that certain UCC-1 Financing Statement from Gabriel GP, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247496;

h.  that certain UCC-1 Financing Statement Amendment from Gabriel GP, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166882;

i.  that certain UCC-1 Financing Statement from Gabriel Holdings, LLC in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247254;

j.  that certain UCC-1 Financing Statement Amendment from Gabriel Holdings, LLC in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166885;

k.  that certain UCC-1 Financing Statement from Don's & Ben's Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247012;

l.  that certain UCC-1 Financing Statement Amendment from Don's & Ben's Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166925;

m.  that certain UCC-1 Financing Statement from SA Discount Liquor, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on October 1, 2014, under File No. 14-0031247517;

n.  that certain UCC-1 Financing Statement Amendment from SA Discount Liquor, Inc. in favor of PNC filed in the Office of the Secretary of State of Texas on May 7, 2019, under File No. 19-00166924; and

o.  all other documents relating to the foregoing documents and agreements

(collectively, the "Loan Documents").

16.  In connection with filing the Motion, Debtors have prepared a 15-week budget demonstrating the use of Cash Collateral during that time period. Attached hereto as Exhibit B is a true and correct copy of the Proposed Budget.

### III.   RELIEF REQUESTED

17.     By this Motion, Debtors request entry of an interim and final order authorizing Debtors to use the Cash Collateral pursuant to the attached Proposed Budget. Additionally, Debtors request that the Court establish that the adequate protection offered by Debtors to PNC, as outlined in the Motion, is sufficient under 11 U.S.C. § 361.

### IV.   AUTHORITIES AND ARGUMENTS

#### A. The Court Should Authorize the Use of Cash Collateral

18.     Debtors require use of the Cash Collateral to pay the expenses associated with the operation of their package store locations, as well as providing adequate protection payments to PNC. If the Debtors cannot use the Cash Collateral, the Debtors would be unable to maintain the ongoing operations during the course of the Bankruptcy Cases, which would be detrimental to proposing a plan of reorganization in these Cases. As set forth on Exhibit B, the Proposed Budget provided by Debtors encompasses the routine operation of the package stores. Debtors believe these expenses are reasonable and necessary to insure that the value of the entire business will not deteriorate during the course of these Cases.

19.     Bankruptcy Code section 363(c)(2) provides that the Debtors may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." Bankruptcy Code section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest. While PNC has not consented to the use of the Cash Collateral, Debtors are seeking to provide adequate protections that are standard in many of the cases filed before this Court. Debtors will continue to negotiate with PNC on an

agreed order to use the Cash Collateral, but in any event the proposed use of the Cash Collateral is reasonable and necessary to sustain the operations of the Debtors and preserve the value of the ongoing business operations.

## B.  Approval of Adequate Protection

20.     Under Bankruptcy Code section 361, when adequate protection is required under Bankruptcy Code section 363 to protect against any diminution in value of an interest of an entity in property, a debtor may provide additional or replacement liens to the prepetition secured creditor.  11 U.S.C. §361(2).  The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987).  Adequate protection can be provided in a number of ways (*see, e.g.*, 11 U.S.C. §361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. at 631 (purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest" during the Chapter 11 reorganization).

21.     In exchange for the Debtors' use of the Cash Collateral, Debtors would propose adequate protection payments to PNC equal to the contractual interest at the non-default rate (in the amount of $35,000) during the course of the Cases.

22.     Debtors will also agree that PNC shall have valid first-priority replacement and additional liens and security interests, with priority over all other liens and security interests, save and except for the ad valorem tax liens of any Texas taxing authority, in and upon any and all assets of Debtors, including, but not limited to, the Collateral, Cash Collateral and all assets described as Collateral in the Loan Documents. Such replacement liens shall be automatically perfected without necessity to any further filing by PNC.

23.　As additional adequate protection, to the extent applicable, PNC shall be granted an allowed super-priority administrative expense claim as set forth under § 364(c)(1) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under Sections 507(b) and 503(b) of the Bankruptcy Code, to the extent of any diminution in the value of PNC's interest in the Collateral and Cash Collateral.　PNC shall also be granted all of the other benefits and protections allowable under Sections 503(b) and 507(b) of the Bankruptcy Code.

24.　As further adequate protection, the Debtors shall pay the reasonable fees and expenses of PNC, whether incurred before or after the Petition Date, as set forth in the applicable Loan Documents, without further notice, motion, or application to, order of, or hearing before, the Court; provided, however, that in connection with any PNC request for reimbursement of fees, PNC shall submit a summary statement of the time and amounts subject to such reimbursement request to the Debtors, the U.S. Trustee, and counsel for any Committee, and such parties shall have fourteen (14) days following the receipt of such statements to object to the reasonableness of the fees and expenses included in any such statements.　If no objection is received within such fourteen (14) day period, the Debtors are authorized to pay the fees and expenses requested, without further notice or Court order.　The automatic stay under 11 U.S.C. § 362(a) is hereby modified to the extent necessary to permit PNC to receive and apply the payments as provided for hereunder.

25.　Debtors request that the Court conduct an interim hearing to consider the relief requested in the Motion, as soon as possible, so that Debtors may maintain operations pending approval of a final order.　Debtors expect that the final form of order will be substantially in the same form as Exhibit A attached hereto.

## V.    <u>WAIVER OF BANKRUPTCY RULES 6003, 6004(a) AND 6004(h)</u>

26.    Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm[.]" Fed. R. Bankr. P. 6003(b). For the reasons described herein, Debtors submit that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtors and their estates. To implement the foregoing successfully, Debtors seek a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extend these rules are applicable.

## VI.    <u>NO PRIOR REQUEST</u>

27.    No prior request for the relief sought in this Motion has been made to this or any other court.

## VII.    <u>NOTICE</u>

28.    Debtors have caused a copy of this Motion to be served upon (i) the proposed Limited Service List, which includes the prepetition lenders and their counsel and the consolidated list of the top twenty (20) largest unsecured creditors of Debtors; (ii) the United States Trustee; (iii) those persons who have formally appeared in these Cases and requested service pursuant to Bankruptcy Rule 2002; and (iv) all applicable government agencies to the extent required by the Bankruptcy Local Rules. Debtors submit that no other or further notice need be provided.

WHEREFORE, Debtors respectfully request that the Court enter an Order authorizing Debtors to (a) use Cash Collateral as set forth in the Proposed Budget, (b) provide adequate protection to PNC and (c) for such other and further relief to which Debtor may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Thomas Rice*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Thomas Rice
    Texas State Bar No. 24025613
    trice@pulmanlaw.com
    Amber L. Fly
    Texas State Bar No. 24101761
    afly@pulmanlaw.com

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESION**

# EXHIBIT 1

## Gabriel Investment Group, Inc.

**15 Week Cash flow**

Beginning September 30, 2019 - January 11, 2020

| | 5-Oct-19 | 12-Oct-19 | 19-Oct-19 | 26-Oct-19 | 2-Nov-19 | 9-Nov-19 | 16-Nov-19 | 23-Nov-19 | 30-Nov-19 | 7-Dec-19 | 14-Dec-19 | 21-Dec-19 | 28-Dec-19 | 4-Jan-20 | 11-Jan-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 925,995 | $ 873,939 | $ 992,475 | $ 1,008,778 | $ 972,578 | $ 992,044 | $ 1,049,388 | $ 1,339,319 | $ 1,007,119 | $ 1,160,873 | $ 1,335,970 | $ 2,000,571 | $ 1,827,832 | $ 1,483,734 | $ 862,919 |
| Reduce 5 Stores | (76,082) | (79,878) | (79,878) | (79,878) | (79,878) | (88,415) | (88,415) | (88,415) | (88,415) | (88,415) | (130,953) | (130,953) | (130,953) | (130,953) | (69,908) |
| Net Sales | 849,913 | 794,061 | 912,597 | 928,900 | 892,700 | 903,629 | 960,973 | 1,250,904 | 918,704 | 1,029,920 | 1,205,017 | 1,869,618 | 1,696,879 | 1,352,781 | 793,011 |
| | | | | | | | | | | | | | | | |
| Beginning Cash | 400,000 | 133,705 | 170,764 | 174,790 | 184,007 | 245,678 | 242,753 | 257,195 | 457,689 | 384,938 | 185,911 | 193,912 | 201,800 | 243,784 | 281,453 |
| Weekly Collections | 339,965 | 816,402 | 865,183 | 922,379 | 907,180 | 899,257 | 938,035 | 1,134,931 | 1,051,584 | 985,433 | 1,134,978 | 1,603,777 | 1,765,974 | 1,490,420 | 1,016,919 |
| A/R Collections | 131,698 | 175,597 | 219,496 | 219,496 | 131,698 | 47,843 | - | - | - | - | - | - | - | - | - |
| Sales Tax Collection | 28,047 | 68,275 | 69,422 | 75,827 | 75,440 | 74,008 | 76,442 | 88,848 | 92,237 | 79,463 | 90,747 | 121,346 | 148,543 | 128,637 | 93,132 |
| **Total Cash Available** | **899,710** | **1,193,978** | **1,324,864** | **1,392,492** | **1,298,324** | **1,218,944** | **1,257,230** | **1,480,974** | **1,601,510** | **1,449,835** | **1,411,636** | **1,919,036** | **2,116,317** | **1,862,841** | **1,391,504** |
| | | | | | | | | | | | | | | | |
| Rent | - | - | - | - | - | - | - | - | 360,264 | 360,264 | - | - | - | 360,264 | - |
| Insurance | - | 7,485 | 20,463 | 7,485 | - | 7,485 | 20,463 | 3,112 | 4,273 | - | 7,485 | 20,463 | 7,485 | - | 20,463 |
| Medical Insur. Employer | 59,301 | - | - | - | 47,074 | - | - | - | - | 47,074 | - | - | - | 47,074 | - |
| Employee Portion | 37,699 | - | - | - | 29,926 | - | - | - | - | 29,926 | - | - | - | 29,926 | - |
| Sales Tax | - | - | - | 325,000 | - | - | - | - | 340,000 | - | - | - | 410,000 | - | - |
| Net Payroll | 211,500 | - | 211,500 | - | 161,683 | - | 141,683 | - | 141,683 | - | 151,683 | - | 151,683 | - | 151,683 |
| Payroll Taxes | - | 65,000 | - | 70,500 | - | 53,894 | - | 47,228 | 47,228 | 47,228 | - | 50,561 | - | 50,561 | - |
| Utilities - Electric | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 |
| Utilities - Water | 600 | 600 | 850 | 600 | 600 | 600 | 850 | 600 | 600 | 850 | 850 | 600 | 600 | 600 | 600 |
| Internet Connection | 8,427 | - | - | - | 8,427 | - | - | - | - | 8,427 | - | - | - | 8,427 | - |
| Garbage Collection | 3,827 | 433 | 433 | - | 3,827 | - | - | - | - | 3,827 | 433 | - | - | 3,827 | - |
| Cell Phone | - | 2,800 | 2,800 | - | - | - | - | 2,800 | - | - | - | 2,800 | - | - | - |
| Vehicle | 5,776 | 1,068 | 1,068 | 1,068 | 5,776 | 914 | 914 | 1,068 | 914 | 5,776 | 914 | 1,068 | 5,776 | 5,776 | 914 |
| Maintenance | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Refrigeration Repairs | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 6,000 | 3,000 | 3,000 | 3,000 |
| Cleaning Services | 9,000 | 6,000 | 6,000 | 9,000 | 9,000 | 6,000 | 6,000 | 6,000 | 6,000 | 9,000 | 6,000 | 6,000 | 9,000 | 9,000 | 6,000 |
| Ezzell | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Other Inventory | 12,000 | 114,000 | 119,000 | 119,000 | 119,000 | 119,000 | 128,500 | 128,500 | 139,500 | 139,500 | 139,500 | 134,500 | 121,500 | 110,000 | 110,000 |
| Republic | 77,500 | 248,295 | 245,493 | 180,301 | 195,577 | 220,579 | 210,782 | 227,569 | 171,712 | 173,721 | 271,057 | 451,232 | 367,683 | 292,399 | 194,434 |
| Glazer | 197,500 | 504,113 | 498,425 | 391,823 | 397,081 | 427,950 | 427,950 | 462,033 | 348,628 | 550,327 | 550,327 | 916,137 | 746,507 | 593,659 | 394,760 |
| Sundry Expense Items | 5,000 | 10,000 | 10,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Credit Card Fees | 26,000 | 35,000 | - | 6,900 | 300 | - | - | 6,900 | 300 | 20,000 | 35,000 | - | 7,200 | - | - |
| Licenses | 2,500 | - | - | 12,000 | 4,500 | 61,000 | - | 3,600 | - | 26,000 | - | - | - | - | - |
| Employee Expense Report | - | - | - | - | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | - |
| Professional Fees | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | - | - | 10,000 | - | - | - | - | 10,000 | - |
| Holland & Knight | - | - | - | - | 10,000 | - | - | 20,000 | - | - | - | 20,000 | - | - | 20,000 |
| Pulman, Cappuccio & Pull | - | - | - | - | - | - | - | 25,000 | - | - | - | 25,000 | - | 20,000 | 25,000 |
| PNC Interest | 77,500 | - | 35,000 | 35,000 | - | - | - | 35,000 | - | - | 35,000 | 35,000 | 35,000 | - | 25,000 |
| **Total Expenditures** | **$ 766,005** | **$ 1,023,214** | **$ 1,150,074** | **$ 1,208,485** | **$ 1,052,646** | **$ 976,191** | **$ 1,000,035** | **$ 1,023,285** | **$ 1,216,572** | **$ 1,263,924** | **$ 1,217,723** | **$ 1,717,236** | **$ 1,872,533** | **$ 1,581,388** | **$ 979,012** |
| | | | | | | | | | | | | | | | |
| **Ending Cash Available** | **$ 133,705** | **$ 170,764** | **$ 174,790** | **$ 184,007** | **$ 245,678** | **$ 242,753** | **$ 257,195** | **$ 457,689** | **$ 384,938** | **$ 185,911** | **$ 193,912** | **$ 201,800** | **$ 243,784** | **$ 281,453** | **$ 412,492** |

# EXHIBIT B

# Gabriel Investment Group, Inc.

**15 Week Cash flow**
Beginning September 30, 2019 - January 11, 2020

| | 5-Oct-19 | 12-Oct-19 | 19-Oct-19 | 26-Oct-19 | 2-Nov-19 | 9-Nov-19 | 16-Nov-19 | 23-Nov-19 | 30-Nov-19 | 7-Dec-19 | 14-Dec-19 | 21-Dec-19 | 28-Dec-19 | 4-Jan-20 | 11-Jan-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | $ 925,995 | $ 873,939 | $ 992,475 | $ 1,008,778 | $ 972,578 | $ 992,044 | $ 1,049,388 | $ 1,339,319 | $ 1,007,119 | $ 1,160,873 | $ 1,335,970 | $ 2,000,571 | $ 1,827,832 | $ 1,483,734 | $ 862,919 |
| Reduce 5 Stores | (76,082) | (79,878) | (79,878) | (79,878) | (79,878) | (88,415) | (88,415) | (88,415) | (88,415) | (130,953) | (130,953) | (130,953) | (130,953) | (130,953) | (69,908) |
| Net Sales | 849,913 | 794,061 | 912,597 | 928,900 | 892,700 | 903,629 | 960,973 | 1,250,904 | 918,704 | 1,029,920 | 1,205,017 | 1,869,618 | 1,696,879 | 1,352,781 | 793,011 |
| | | | | | | | | | | | | | | | |
| Beginning Cash | 400,000 | 133,705 | 170,764 | 174,790 | 184,007 | 245,678 | 242,753 | 257,195 | 457,689 | 384,938 | 185,911 | 193,912 | 201,800 | 243,784 | 281,453 |
| Weekly Collections | 339,965 | 816,402 | 865,183 | 922,379 | 907,180 | 899,257 | 938,035 | 1,134,931 | 1,051,584 | 985,433 | 1,134,978 | 1,603,777 | 1,765,974 | 1,490,420 | 1,016,919 |
| A/R Collections | 131,698 | 175,597 | 219,496 | 219,496 | 131,698 | - | - | - | - | - | - | - | - | - | - |
| Sales Tax Collection | 28,047 | 68,275 | 69,422 | 75,827 | 75,440 | 74,008 | 76,442 | 88,848 | 92,237 | 79,463 | 90,747 | 121,346 | 148,543 | 128,637 | 93,132 |
| **Total Cash Available** | 899,710 | 1,193,978 | 1,324,864 | 1,392,492 | 1,298,324 | 1,218,944 | 1,257,230 | 1,480,974 | 1,601,510 | 1,449,835 | 1,411,636 | 1,919,036 | 2,116,317 | 1,862,841 | 1,391,504 |
| | | | | | | | | | | | | | | | |
| Rent | - | - | - | - | - | - | - | - | - | 360,264 | - | - | - | 360,264 | - |
| Insurance | - | 7,485 | 20,463 | 7,485 | - | 7,485 | 20,463 | 3,112 | 4,273 | - | 7,485 | 20,463 | 7,485 | - | 20,463 |
| Medical Insur. Employer | 59,301 | - | - | - | 47,074 | - | - | - | - | 47,074 | - | - | - | 47,074 | - |
| Employee Portion | 37,699 | - | - | - | 29,926 | - | - | - | - | 29,926 | - | - | - | 29,926 | - |
| Sales Tax | - | - | - | 325,000 | - | - | - | - | 340,000 | - | - | - | 410,000 | - | - |
| Net Payroll | 211,500 | - | 211,500 | - | 161,683 | - | 141,683 | - | 141,683 | - | 151,683 | - | 151,683 | - | 151,683 |
| Payroll Taxes | - | 65,000 | - | 70,500 | - | 53,894 | - | 47,228 | - | 47,228 | - | 50,561 | - | 50,561 | - |
| Utilities -Electric | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 | 24,875 |
| Utilities - Water | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| Internet Connection | 8,427 | - | 850 | - | 8,427 | - | 850 | - | - | 8,427 | 850 | - | - | 8,427 | 850 |
| Garbage Collection | 3,827 | 433 | - | - | 3,827 | - | 433 | - | - | 3,827 | 433 | - | - | 3,827 | 433 |
| Cell Phone | - | - | 2,800 | - | - | - | - | 2,800 | - | - | - | 2,800 | - | - | - |
| Vehicle | 5,776 | 914 | 1,068 | - | 5,776 | 914 | - | 1,068 | - | 5,776 | 914 | 1,068 | - | 5,776 | 914 |
| Maintenance | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Refrigeration Repairs | 3,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| Cleaning Services | 9,000 | - | - | - | 9,000 | - | - | - | - | 9,000 | - | - | - | 9,000 | - |
| Ezzell | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Other Inventory | 12,000 | 114,000 | 119,000 | 119,000 | 119,000 | 119,000 | 128,500 | 128,500 | 139,500 | 139,500 | 139,500 | 134,500 | 121,500 | 110,000 | 110,000 |
| Republic | 77,500 | 248,295 | 245,493 | 180,301 | 195,577 | 220,579 | 210,782 | 227,569 | 171,712 | 173,721 | 271,057 | 451,232 | 367,683 | 292,399 | 194,434 |
| Glazer | 197,500 | 504,113 | 498,425 | 391,823 | 397,081 | 447,843 | 427,950 | 462,033 | 348,628 | 352,706 | 550,327 | 916,137 | 746,507 | 593,659 | 394,760 |
| Sundry Expense Items | 5,000 | 10,000 | 10,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Credit Card Fees | 26,000 | 35,000 | - | 6,900 | 300 | 61,000 | - | 6,900 | 300 | 26,000 | 35,000 | - | 7,200 | - | - |
| Licenses | 2,500 | 2,500 | - | 12,000 | 4,500 | 5,000 | 8,900 | 3,600 | - | - | - | - | - | - | - |
| Employee Expense Report | - | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Professional Fees | - | - | - | - | 10,000 | - | - | - | 10,000 | - | - | - | 10,000 | - | - |
| Holland & Knight | - | - | - | - | - | - | - | 20,000 | - | - | - | 20,000 | - | - | 20,000 |
| Pulman, Cappuccio & Pull | - | - | - | - | - | - | - | 25,000 | - | - | - | 25,000 | - | - | 25,000 |
| PNC Interest | 77,500 | - | - | 35,000 | - | - | - | 35,000 | - | - | - | 35,000 | - | - | - |
| **Total Expenditures** | 766,005 | 1,023,214 | 1,150,074 | 1,208,485 | 1,052,646 | 976,191 | 1,000,035 | 1,023,285 | 1,216,572 | 1,263,924 | 1,217,723 | 1,717,236 | 1,872,533 | 1,581,388 | 979,012 |
| | | | | | | | | | | | | | | | |
| **Ending Cash Available** | $ 133,705 | $ 170,764 | $ 174,790 | $ 184,007 | $ 245,678 | $ 242,753 | $ 257,195 | $ 457,689 | $ 384,938 | $ 185,911 | $ 193,912 | $ 201,800 | $ 243,784 | $ 281,453 | $ 412,492 |