IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| GABRIEL INVESTMENT GROUP, INC., ET AL., | § | BANKRUPTCY NO. 19-52298-RBK |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |

---

**APPLICATION TO EMPLOY WILLIAM R. PATTERSON OF HMP ADVISORY HOLDINGS, LLC, dba HARNEY PARTNERS, AS THE CHIEF RESTRUCTURING OFFICER TO DEBTORS**

---

TO THE HONORABLE RONALD B. KING, UNITED STATES BANKRUPTCY JUDGE:

Gabriel Investment Group, Inc., et al., ("**Debtors**")[1] hereby file this *Application to Employ William R. Patterson of HMP Advisory Holdings, LLC, dba Harney Partners, as the Chief Restructuring Officer to Debtors* (the "**Application**"). In support of the Application, Debtors rely upon the *Declaration of William R. Patterson in Support of Application to Employ HMP Advisory Holdings, LLC, dba Harney Partners, as the Chief Restructuring Officer to Debtors* (the "**Patterson Declaration**") attached hereto as Exhibit A. Debtors present the Application and respectfully represent the following:

## JURISDICTION, VENUE, AND BACKGROUND

1.       This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The terms "Debtors" and "Gabriel's" as used herein shall mean Gabriel Investment Group, Inc. ("**GIG**"), Gabriel GP, Inc. ("**GP**"), Gabriel Holdings, LLC ("**Gabriel Holdings**"), Don's & Ben's, Inc. ("**D&B**"), and S.A. Discount Liquor, Inc. ("**Discount Liquor**") collectively.

{00457272}                                    1

2.      The statutory predicates for the relief requested herein are Sections 105(a), 363(b), 327 and 330 of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014 of the Local Rules of Bankruptcy Procedure for the Western District of Texas.

3.      On September 27, 2019 (the "Petition Date"), Debtors filed voluntary petitions under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

4.      Debtors continue to manage and operate their business as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. The Official Committee of Unsecured Creditors was appointed on November 21, 2019.  No trustee or examiner has been appointed.

5.      Attached hereto as Exhibit B is the proposed order on the Application.

6.      Gabriel's has been a San Antonio institution since 1948.  The Gabriel family has managed a chain of South Texas package stores that over the course of two or three generations grew to become a well-known community mainstay, one that today employs approximately 250 individuals across the region. Throughout its history, Gabriel's has supplied the citizens of San Antonio with fine wines, high-quality liquors, and exceptional beers at reasonable prices.  It has also been a bastion of the San Antonio community through its involvement in various events all over the city, including Fiesta, as well as its involvement with various non-profits raising money to support the region's less fortunate.  Today, Gabriel's operates 15 package store locations as Gabriel's Liquor and 30 package store locations as Don's & Ben's Liquor.

7.      While competition is a challenge for any business, beginning in 2013, Gabriel's began facing increased competition from the influx of big-box retailers.  These changes in the San Antonio market gradually caused several of Gabriel's locations to become

unprofitable. Additionally, Gabriel's wholesale business started to suffer losses due to increased competition. The Gabriel family did its best to manage the operations to address this economic turmoil; however, the losses continued to mount.

8.      In 2019, the Gabriel family considered merging Gabriel's with a Texas retailer that had the financial resources to weather the tougher competition in San Antonio. Unfortunately, even though the discussions proceeded to the point of setting a closing date, the merger ultimately fell through. During that same time, Gabriel's failed to timely pay its vendors, which led to Gabriel's being placed on the Texas Alcoholic Beverage Commission ("TABC") Delinquent List. Pursuant to TABC regulations, placement on the TABC Delinquent List prohibits all liquor wholesalers from selling to Gabriel's.

9.      Gabriel's line of credit with its lender PNC Bank, National Association, expired on September 30, 2019.

10.     Gabriel's has sought bankruptcy protection to reorganize its business model and return to profitability. Prior to the Petition Date, Gabriel's ceased its wholesale operations. As part of these Bankruptcy Cases, Gabriel's intends to close the unprofitable locations while focusing on those locations that have been high-performing for Gabriel's throughout its history. Gabriel's will also work with its creditors to propose a plan of reorganization that will allow it to pay its creditors in full while preserving the positive cash flow that is so critical to continued operation of the package stores.

## RELIEF REQUESTED

11.     By this Application, pursuant to sections §§ 363(b), 327(a) and 328 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, Debtors seek to employ William R. Patterson to act as Chief Restructuring Office ("**CRO**") to Debtors in the

above-referenced Chapter 11 Cases. Other advisors at the Firm may also provide services to Debtors, as necessary. The contact information for Mr. Patterson is:

Mr. William R. Patterson
HARNEY PARTNERS
401 Congress Avenue, Suite 1540
Austin, Texas 78701
(512) 633-3696 Telephone
bpatterson@harneypartners.com

12.     Mr. Patterson is well-suited to be the CRO to Debtors, which will enable Debtors to effectively and fully execute duties as debtors-in-possession. Mr. Patterson and Harney Partners have considerable experience in providing restructuring services to debtors in Chapter 11 bankruptcy cases. Debtors believe that Mr. Patterson is well qualified to deal effectively and efficiently with the restructuring issues involved in the Chapter 11 Cases based on the experience and the Harney Partners' capabilities.

13.     Debtors presently contemplate that the professional services to be provided to Debtors and the estates by Mr. Patterson will include, without limitation, the following:

     a.     Negotiate and execute an agreement for the sale of assets of Gabriel GP and its subsidiaries;

     b.     Negotiate and execute any agreements for the sale of any personal property of Gabriel Investment Group, Inc. (including, without limitation, artwork, equipment, and removable fixtures of Gabriel Investment Group, Inc.);

     c.     Negotiate and execute any agreements for the sale, license, or use of permits held by Gabriel Investment Group, Inc. in connection with the sale of any assets of Gabriel GP and its subsidiaries;

     d.     Manage all aspects of any plan of reorganization proposed by any of the Debtors, including negotiation of plan terms and prosecution of plan confirmation;

     e.     Provide strategic advice with regard to restructuring transactions;

     f.     Authorization to remove or replace any officers or employees of Gabriel GP or its subsidiaries;

{00457272}                                                4

g.  Obtain any regulatory, court, and/or government approvals needed to consummate a sale or restructuring of the Debtors;

h.  Attend meetings of Debtors with respect to matters on which Mr. Patterson has been engaged to advise hereunder;

i.  Assist Debtors in preparing documentation within the Firm's area of expertise that is required in connection with any restructuring;

j.  Advise and assist the Debtors in structuring any sale transaction and negotiating the purchase agreements;

k.  Provide information and updates to creditors regarding the Debtors' operational results and restructuring progress;

l.  Any incremental services, not included in this scope, as agreed to by the parties and outlined in a work authorization form; and

m.  Otherwise assist the Debtors and its other professionals, as necessary, through closing on a best efforts basis.

14.  It is necessary that Debtors employ a CRO to render the foregoing professional services. Mr. Patterson has stated his desire and willingness to act as CRO and render the necessary professional services.

## THE FIRM'S CONNECTIONS AND LACK OF CONFLICTS

### A.  CONNECTIONS WITH DEBTORS

15.  In preparation of this Application, Debtors reviewed the Patterson Declaration and relied upon the statements made by Mr. Patterson.  Based on this information, Debtors are aware that Mr. Patterson has been employed previously by the Debtors several years ago; however, the Debtors are unaware of any circumstances where Harney Partners has a current connection with the Debtors that would disqualify Mr. Patterson from providing restructuring services to Debtors in the Cases. To the best of the Debtors' knowledge and belief, Harney Partners has no relationship that presently causes a disqualification, an actual conflict of interest, or otherwise renders Mr.

Patterson ineligible to serve as CRO to Debtors. Accordingly, Debtors believe Mr. Patterson's engagement to provide restructuring services to Debtors in the Cases is permissible under the Bankruptcy Code and is in the best interest of the estates and all parties in interest.

## B. CONNECTIONS WITH CREDITORS AND OTHER PARTIES IN INTEREST

16.     Based on this information contained in the Patterson Declaration, Debtors are unaware of any circumstances where Harney Partners has a connection with the Debtors' creditors and/or other parties in interest in these Cases that would disqualify the Firm from providing restructuring services to Debtors in these Cases.

17.     Harney Partners will conduct an ongoing review of its files to assure that no actual conflict or other disqualifying circumstances exist. If any new facts or relationships are discovered, Harney Partners will supplement the Patterson Declaration accordingly.

18.     Harney Partners providing restructuring services to Debtors in these Cases does not hold or represent an interest adverse to the estates and Harney Partners principals and employees are disinterested persons under 11 U.S.C. § 101(14).

## COMPENSATION TERMS

19.     Harney Partners has agreed to provide the restructuring services as described herein. Harney Partners' fees shall be calculated as follows

| | |
|---|---|
| President / EVP | $450 - $495 / hour |
| Managing Director | $400 - $450 / hour |
| Senior Manager | $300 - $350 / hour |
| Manager | $250 - $300 / hour |
| Sr. Consultant | $175 - $250 / hour |
| Support Staff | $  80 - $175 / hour |

For this matter, the Chief Restructuring Officer services will be provided by Bill Patterson at $450.00 per hour. Additional resources may be added as needed, with advance consent by Debtors.

{00457272}                                          6

20.     In addition to the foregoing fees, Debtors will also reimburse the Firm for reasonable out-of-pocket expenses. The expenses charged to the Firm's clients include, among other things, photocopying, courier fees, postage, travel expenses and such other out-of-pocket costs that may be reasonably necessary in the rendition of restructuring services. The Firm will charge the estates for expenses in a manner and at rates consistent with charges made generally to the Firm's other clients and consistent with the applicable Bankruptcy Local Rules and United States Trustee guidelines.

21.     Payments to the Firm shall be subject to the terms, conditions, and limitations regarding such compensation set forth in the Debtors' cash collateral order and approved cash collateral budgets or as otherwise provided by order of the Court or a confirmed plan.

22.     The Firm's compliance with the requirements of §§ 327, 328, 330, and 504 of the Bankruptcy Code, and Bankruptcy Rule 2014 are set forth in detail in the Patterson Declaration.

23.     No previous application for the relief sought herein has been made to this or any other court. Debtors have not sought to employ any other CRO for representation in the Cases.

WHEREFORE, Debtors respectfully request that the Court enter an Order approving the *Application to Employ William R. Patterson of HMP Advisory Holdings, LLC, dba Harney Partners, as the Chief Restructuring Officer to Debtors,* authorizing the employment of the Firm, effective as of April 1, 2020, as set forth above and granting such other relief as is just and proper.

Respectfully submitted,

GABRIEL INVESTMENT GROUP, INC., ET AL.

By: _____
Inez Cindy Gabriel
President of Gabriel Investment Group, Inc.

{00457272}                    7

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be filed on April 20, 2020, using the Court's CM/ECF System which caused it to be served upon those parties registered in the system as indicated below.

*Via CM/ECF:*
*USTPRegion07.SN.ECF@usdoj.gov*
United States Trustee
615 E. Houston, Room 533
San Antonio, TX 78205

*Via CM/ECF: brian.smith@hklaw.com ,*
*brent.mcilwain@hklaw.com ;*
*robert.jones@hklaw.com;*
Brent R. McIlwain
Brian J. Smith
Holland & Knight
200 Crescent Court, Suite 1600
Dallas, TX 75201

*Via CM/ECF: srose@jw.com*
J. Scott Rose
Jackson Walker, LLP
112 E. Pecan St., Suite 2400
San Antonio, TX 78205

*Via CM/ECF: david.wender@alston.com*
David A. Wender
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

*Via CM/ECF: pautry@branscomblaw.com*
Patrick H. Autry
Branscomb Law
8023 Vantage, # 560
San Antonio, TX 78230

*Via CM/ECF: don.stecker@lgbs.com*
Don Stecker
Linebarger Goggan et al
711 Navarro, Suite 300
San Antonio, TX 78205

*Via CM/ECF: csmall@dslawpc.com ,*
*drios@dslawpc.com*
Caroline Newman Small /Sarah Santos
Davis & Santos, P.C.
719 S. Flores Street
San Antonio, Texas 78204

*Via CM/ECF: mshriro@singerlevick.com*
Michelle Shriro
Singer & Levick
16200 Addison Rd. #140
Addison, TX 75001

*Via CM/ECF: dgragg@langleybanack.com*
*cjohnston@langleybanack.com*
*sfoushee@langleybanack.com*
David S. Gragg
Langley & Banack Incorporated
745 E. Mulberry #700
San Antonio, Texas 78212-3166

*Via CM/ECF:*
*ahochheiser@mauricewutscher.com*
Alan Craig Hochheiser
Maurice Wutscher, LLP
23611 Chagrin Blvd., Suite 207
Beachwood, OH 44122

*Via CM/ECF: treywhite@villawhite.com ,*
*ecfnotices@villawhite.com ;*
*bankruptcysa@gmail.com*
Morris E. "Trey" White
Villa & White, LLP
1100 NW Loop 410 #802
San Antonio, Texas 78213

***Via CM/ECF: ron@smeberg.com***
Ronald J. Smeberg
The Smeberg Law Firm, PLLC
2010 West Kings Highway
San Antonio, Texas 78201-4926

***Via CM/ECF: tmckenzie@tsslawyers.com***
Thomas W. McKenzie
Law Office of Thomas W. McKenzie
10107 McAllister Frwy
San Antonio, TX  78216

***Via CM/ECF:***
***jason.binford@oag.texas.gov;***
***matthew.bohuslav@oag.texas.gov***
Jason B. Binford
Matthew Bohuslav
Office of Texas A.G.
Bankruptcy & Collections Division
P. O. Box 12548 MC008
Austin, Texas 78711-2548

***Via CM/ECF:***
***jwharris@johnwharrislaw.com***
John W. Harris
Law Offices of John Wallis Harris
514 Thelma Drive
San Antonio, Texas 78212

***Via CM/ECF:***
***lynn.buterl@huschblackwell.com***
Lynn H. Butler
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX  78701

***Via CM/ECF: royal@binghamandlea.com***
Royal B. Lea, III
Bingham & Lee, pc
319 Maverick St.
San Antonio, TX  78212

/s/Thomas Rice
Thomas Rice

{00457272}                                                    9

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| GABRIEL INVESTMENT GROUP, INC., ET AL., | § | BANKRUPTCY NO. 19-52298-RBK |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |

UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF WILLIAM R. PATTERSON IN
SUPPORT OF APPLICATION TO EMPLOY WILLIAM R. PATTERSON OF HMP ADVISORY
HOLDINGS, LLC, DBA HARNEY PARTNERS, AS THE CHIEF RESTRUCTURING OFFICER TO
DEBTORS

I, William R. Patterson, pursuant to 28 U.S.C. § 1746 declare as follows:

1.      I am an Executive Vice President of HMP Advisory Holdings, LLC, dba Harney Partners (the "Firm"), proposed Firm to provide restructuring services through employment as Chief Restructuring Officer ("CRO") on behalf of Gabriel Investment Group Inc. et al. ("Debtors" or "Gabriel's"),[1] Debtors in the above captioned cases (the "Cases"). I am submitting this declaration (the "Declaration") in support of the Application to Employ William R. Patterson of HMP Advisory Holdings, LLC, dba Harney Partners, as the Chief Restructuring Officer to Debtors (the "Application").

## I.    BACKGROUND

2.      I have been employed by the Firm since January 1, 2019.

3.      My office address is 401 Congress Avenue, Suite 1540, Austin, Texas 78701; telephone (512) 633-3696; and email: bpatterson@harneypartners.com.

---

[1] The terms "Debtors" and "Gabriel's" as used herein shall mean Gabriel Investment Group, Inc. ("GIG"), Gabriel GP, Inc. ("GP"), Gabriel Holdings, LLC ("Gabriel Holdings"), Don's & Ben's, Inc. ("D&B"), and S.A. Discount Liquor, Inc. ("Discount Liquor") collectively.

{00031518}                                    1

4.     Debtors have proposed to retain the Firm to provide restructuring services through employment of myself as CRO.

5.     Attached hereto as Exhibit 1 is a copy of the Engagement Agreement by and between Debtors and the Firm.  The Firm will provide the following services for Debtors:

a.     Negotiate and execute an agreement for the sale of assets of Gabriel GP and its subsidiaries;

b.     Negotiate and execute any agreements for the sale of any personal property of Gabriel Investment Group, Inc. (including, without limitation, artwork, equipment, and removable fixtures of Gabriel Investment Group, Inc.);

c.     Negotiate and execute any agreements for the sale, license, or use of permits held by Gabriel Investment Group, Inc. in connection with the sale of any assets of Gabriel GP and its subsidiaries;

d.     Manage all aspects of any plan of reorganization proposed by any of the Debtors, including negotiation of plan terms and prosecution of plan confirmation;

e.     Provide strategic advice with regard to restructuring transactions;

f.     Authorization to remove or replace any officers or employees of Gabriel GP or its subsidiaries;

g.     Obtain any regulatory, court, and/or government approvals needed to consummate a sale or restructuring of the Debtors;

h.     Attend meetings of Debtors with respect to matters on which Mr. Patterson has been engaged to advise hereunder;

i.     Assist Debtors in preparing documentation within the Firm's area of expertise that is required in connection with any restructuring;

j.     Advise and assist the Debtors in structuring any sale transaction and negotiating the purchase agreements;

k.     Provide information and updates to creditors regarding the Debtors' operational results and restructuring progress;

l.     Any incremental services, not included in this scope, as agreed to by the parties and outlined in a work authorization form; and

{00031518}                                   2

m.    Otherwise assist the Debtors and its other professionals, as necessary, through closing on a best efforts basis.

## II.    <u>CONNECTIONS WITH DEBTOR, CREDITORS AND PARTIES IN INTEREST</u>

6.    In preparing this Declaration, I performed a review of the connections and relationships between the Firm, Debtors, creditors of Debtors (as listed on PACER as of April 15, 2020), and other parties in interest based upon the information supplied to me by Debtors.  In the past, I have worked for the Debtors in connection with the refinancing of their debt obligations. Neither I, nor the Firm holds or provides any current services to any entity holding any interest adverse to Debtors or their Estates as required by 11 U.S.C. § 327(a).  During 2019, the Firm was engaged by Holland & Knight, legal counsel for PNC Bank, on an unrelated matter regarding the default and restructuring of a debt facility on behalf of an unrelated third-party bank. In addition, in 2013, Mr. Patterson, in his predecessor firm, Bridgepoint Consulting, provided CRO services to VPR Operating, a mutual client of Patton & Boggs, predecessor firm of Brent McIlwain and Brian Smith. In 2011, other principals of the Firm (not Patterson) worked with David T. Fyffe ("Fyffe") who was the Chief Financial Officer of the Firm's client, KLN Steel Products Company, LLC.  Fyffe is the Authorized Representative of the Debtor who signed the Schedules and Statement of Financial Affairs in this case.  Other than those matters disclosed herein, the Firm has no presently known connections or relationships with Debtors, Debtors' creditors, any other party in interest and their respective attorneys and accountants, and the United States Trustee or any person employed in the office of the United States Trustee.  To the extent that I become aware of any other relationships or connections, I will promptly file a supplemental declaration disclosing any other relationships or connections.

7.    I am unaware of any circumstances where the Firm has a connection with Debtors in the Cases that would disqualify the Firm from providing restructuring services to the Debtors in

the Cases. I submit that the Firm's retention by the Debtors is permissible under the Bankruptcy Code and is in the best interest of all parties in interest.

8.      Except for the proposed engagement with the Debtors, neither I nor the Firm have provided restructuring services or will provide restructuring services to any other entity in connection with the Cases, and neither I nor the Firm will accept any fee from any other party or parties in interest in the Cases related to the Cases. As a condition to acceptance of the employment as Chief Restructuring Officer to Debtors, the Firm has not and will not undertake to provide restructuring services to any creditor of Debtors in any matter related to the Cases. The Firm is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm and its employees:

   i.    are not creditors, equity security holders, or insiders of Debtors;

   ii.    are not and were not, within two (2) years before the date of the filing of Debtors' petition, a director, officer or employee of Debtors; and

   iii.    do not have an interest materially adverse to the interest of the Estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtors.

## III.   <u>COMPENSATION TERMS</u>

9.      Subject to Court approval and in accordance with sections 327 and 330(a) of the Bankruptcy Code, compensation will be payable to the Firm on an hourly basis, plus reimbursement of actual, necessary expenses incurred by the Firm. The Firm's fees shall be calculated as follows:

| | |
|---|---|
| President / EVP | $450 - $495 / hour |
| Managing Director | $400 - $450 / hour |
| Senior Manager | $300 - $350 / hour |
| Manager | $250 - $300 / hour |
| Sr. Consultant | $175 - $250 / hour |
| Support Staff | $ 80 - $175 / hour |

{00031518}                                    4

For this matter, the Chief Restructuring Officer services will be provided by Bill Patterson at $450.00 per hour. Additional resources may be added as needed, with advance consent by Debtors.

10.     The hourly rates set forth above are the Firm's typical hourly rates for work of this nature. From time to time, other employees of the Firm may serve Debtors in connection with the matters for which the Firm will be retained.  The hourly rates of all employees of the Firm are set at a level designed to fairly compensate the Firm for the work of its professionals and to cover fixed and routine overhead expenses.  It is the Firm's policy, in all of its practice areas, to charge its clients for additional expenses incurred in connection with the Debtors' Cases. The expenses charged to the Firm's clients include, among other things, photocopying, courier fees, postage, travel expenses, and such other out-of-pocket costs that may be reasonably necessary in the rendition of restructuring services.  The Firm will charge Debtors for expenses in a manner and at rates consistent with charges made generally to the Firm's other clients and consistent with the applicable Bankruptcy Local Rules and United States Trustee guidelines.

## IV.     CONCLUSION

11.     In view of the foregoing, I believe that the Firm (i) does not hold an interest adverse to Debtors or their Estates in connection with the Cases, (ii) does not provide restructuring services to any other party in connection with the Cases, and (iii) is a "disinterested person" as that term is defined under section 101(4) of the Bankruptcy Code.  The Firm recognizes, and takes very seriously, its continuing responsibility to be aware of and to further disclose any relationship or connection between it and other parties in interest in connection with Debtors' Cases as they appear or become recognized during the Cases.   Accordingly, we reserve the right to, and shall, supplement this disclosure if necessary if more information becomes available to us reflecting further connections with parties in interest.  The foregoing constitutes the statement of the Firm

pursuant to sections 327 and 328 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal

Rules of Bankruptcy Procedure, and Local Rule 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of April, 2020

William R. Patterson

# EXHIBIT 1



**PERSONAL & CONFIDENTIAL**

April 17, 2020

Cindy Gabriel
Chief Executive Officer
Gabriel Holdings, LLC et. al.
10903 Gabriel's Place
San Antonio, Texas 78217

Dear Cindy:

Thank you for selecting HMP Advisory Holdings, LLC, dba Harney Partners ("HP") to provide advisory services to Gabriel Holdings, LLC ("Gabriel Holdings"); Gabriel GP, Inc. ("Gabriel GP"); Don's & Ben's, Inc. ("Don's & Ben's); SA Discount Liquors, Inc. ("SA Discount"); and Gabriel Investment Group, Inc. ("GIG") (Gabriel Holdings, Gabriel GP, Don's & Ben's, SA Discount, and GIG, collectively "Client" or "Company"). We appreciate your confidence in HP and want to ensure that we exceed your expectations regarding the services we will provide. This letter agreement ("Agreement") will confirm Client's agreement to engage HP for the purpose of providing advisory services on behalf of Client, as provided below.

**SERVICES AND SCOPE**

As requested by Client and agreed by HP, HP will provide Client with financial advisory services, as follows (the "Services"):

      1.    Provide William R. Patterson to serve as the Company's Chief Restructuring Officer ("CRO") to include, without limitation, the following:

          a.    Negotiate and execute an agreement for the sale of assets of Gabriel GP and its subsidiaries;

          b.    Negotiate and execute any agreements for the sale of any personal property of Gabriel Investment Group, Inc. (including, without limitation, artwork, equipment, and removable fixtures of Gabriel Investment Group, Inc.);

          c.    Negotiate and execute any agreements for the sale, license, or use of permits held by Gabriel Investment Group, Inc. in connection with the sale of any assets of Gabriel GP and its subsidiaries;

          d.    Manage all aspects of any plan of reorganization proposed by any of the Debtors, including negotiation of plan terms and prosecution of plan confirmation;

          e.    Provide strategic advice with regard to restructuring transactions;

Gabriel Investment Group, Inc. et. al.
April 17, 2020
P a g e | 2

_____

f.  Authorization to remove or replace any officers or employees of Gabriel GP or its subsidiaries;

g.  Obtain any regulatory, court, and/or government approvals needed to consummate a sale or restructuring of the Debtors;

h.  Attend meetings of Debtors with respect to matters on which Mr. Patterson has been engaged to advise hereunder;

i.  Assist Debtors in preparing documentation within the Firm's area of expertise that is required in connection with any restructuring;

j.  Advise and assist the Debtors in structuring any sale transaction and negotiating the purchase agreements;

k.  Provide information and updates to creditors regarding the Debtors' operational results and restructuring progress;

l.  Any incremental services, not included in this scope, as agreed to by the parties and outlined in a work authorization form; and

m.  Otherwise assist the Company and its other professionals, as necessary, through closing on a best efforts basis.

In addition to the services to be performed by the CRO, the Company agrees that the CRO is authorized the engage other HP personnel, as needed and at no higher billable rates, to timely and efficiently complete the Services.

Based upon the circumstances of this project, Client and HP agree that HP is authorized and directed to communicate directly with the Company's lenders, trade creditors and/or other parties-in-interest, as deemed necessary by HP, regarding matters relevant to the Services. Nothing herein shall require HP to take any action which it believes is in breach of the Client's arrangements with any lender, creditors or other party.

The Services to be provided by HP will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations and the scope of our engagement. As you know, the exercise of professional judgment requires an open dialogue. To provide you the best level of service, we will ask you to timely disclose all pertinent material information to us.

**FEES**
The standard hourly rates for HP professionals are:

President / EVP                    $450 - $495 / hour

Gabriel Investment Group, Inc. et. al.
April 17, 2020
P a g e | 3

_____

| | |
|---|---|
| Managing Director | $400 - $450 / hour |
| Senior Manager | $300 - $350 / hour |
| Manager | $250 - $300 / hour |
| Sr. Consultant | $175 - $250 / hour |
| Support Staff | $ 80 - $175 / hour |

For this matter, the Chief Restructuring Officer services will be provided by Bill Patterson at $450.00 per hour. Additional resources may be added as needed, with advance consent by Client.

Travel time is billed at ½ of the normal hourly rate, plus mileage and out of pocket expense reimbursement. Other out of pocket expenses are billed at actual costs.

HP determines additional staff rates based upon all relevant factors, which might include, for example, that staff's education, experience or expertise within an industry.  Because these factors may evolve over time, HP may modify its hourly rate from time to time, but no more often than every 6 months.

**TERMS**
This letter agreement incorporates the Standard Terms and Conditions set forth in the attached ***Exhibit "A".***

**APPROVAL**
If this letter accurately represents the agreement between the parties, please sign as indicated below and return a PDF copy to bpatterson@harneypartners.com.  We will collect the original version from you when we meet in person.

Again, thank you for the opportunity.  We look forward to working with you.

Sincerely,

*William R. Patterson*

William R. Patterson
*Executive Vice President*


ACCEPTED AND AGREED AS TO FORM AND CONTENT

Gabriel Holdings, LLC;
Gabriel GP, Inc.;
Don's & Ben's, Inc.;
SA Discount Liquors, Inc.; and
Gabriel Investment Group, Inc.

Gabriel Investment Group, Inc. et. al.
April 17, 2020
P a g e | 4

By: _____        Date: 4-20-2020
        Cindy Gabriel, CEO

Gabriel Holdings, LLC et. al.
April 1, 2020
P a g e | 5

_____

### *EXHIBIT "A"*

### <u>STANDARD TERMS AND CONDITIONS</u>

1. <u>**SERVICES**</u>:
HMP Advisory Holdings, LLC, dba Harney Partners  ("HP") will use reasonable efforts to perform the agreed-upon Services more fully described in the engagement letter to which these Standard Terms and Conditions are attached as ***Exhibit "A***." The Client will provide HP with all resources (physical and human) reasonably requested by HP to enable HP to perform the Services.

2. <u>**ACCESS TO CLIENT PERSONNEL AND INFORMATION AND CLIENT REPRESENTATION CONCERNING INFORMATION PROVIDED TO HP**</u>:

    A.    The Client recognizes and confirms that, in acting pursuant to this engagement, HP will be using information in reports and other information provided by others, including, without limitation, information provided by or on behalf of the Company and other third parties. HP does not assume responsibility for and may rely, without independent verification, on the accuracy and completeness of any such reports and information. The Client will provide HP with full access to all Client personnel, books and records, including those of the Client's attorneys (subject to such safeguards as may be necessary to preserve applicable attorney-client privileged communications) and other agents and third-party representatives. The Client also represents and warrants to HP that except as disclosed to HP in writing, all information provided or made available to HP by the Client, its' directors, officers, employees, representatives, attorneys and agents at any time shall (to the best of the Client's knowledge): i) be complete and correct in all material respects, and ii) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made. Client agrees that it shall notify HP if it learns subsequently that any information provided or made available to HP in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

    B.    The services to the Client under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Client acknowledges that numerous factors may affect the Client's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by HP. The Client acknowledges that in rendering its services under this Agreement, HP will be using and relying upon the information provided by Client, its directors, officers, employees, representatives and agents. Under any of the foregoing circumstances, the Client agrees that HP shall have no duty to verify independently the

Gabriel Holdings, LLC et. al.
April 1, 2020
P a g e | 6

_____

reliability, accuracy or completeness of such information. The Client also
agrees that HP shall incur no liability to the Client or any individual or other
entity that may arise if any such information proves to be unreliable,
inaccurate or incomplete.

3.  **FEES AND EXPENSES**:

 HP will send weekly invoices to Client for all fees and expenses, and Client will pay to
HP the amounts charged therein – *via wire transfer or ACH* – upon receipt. Expenses
incurred by HP on behalf of the Client will be invoiced at the actual amount incurred and
not marked up.  Any payments of fees and expenses to HP made with cash collateral of the
Client's secured creditors shall be made only pursuant to the cash collateral budget
approved by the bankruptcy court or as otherwise provided by subsequent bankruptcy court
orders or a confirmed plan.  All invoices are due upon receipt via ACH or wire transfer.
All out-of-town travel time will be billed at 50% of such HP professional's applicable
hourly billing rate.

    A.    In the event HP is authorized by the bankruptcy court as a professional in
Client's proceedings, all professional fees and expenses will be billed by
HP on no less than a monthly basis in accordance with the anticipated court-
approved procedures for monthly interim compensation to all estate
professionals.

    B.    In the event HP is requested or authorized by the Company or is required
by government regulation, subpoena, or other legal process to produce HP's
documents or HP's members, employees, agents, contractors, or
representatives as witnesses with respect to HP's services for the Company,
the Company will reimburse HP for its professional time and expenses at
the current rates in effect at such time.

4.  **NO THIRD PARTY BENEFICIARIES:**

The Client acknowledges that all information, whether written or oral, created, prepared, or
compiled by HP in connection with this Agreement is intended solely for the benefit and
use of the Client, provided however, HP acknowledges and agrees that Client shall utilize
HP's work in negotiations with Client's creditors and HP may disclose any such non-
privileged work to the Client's creditors at HP's discretion.  No other individual or entity
shall be entitled to rely on such information for any purpose. Client agrees that such
information shall not be reproduced, disseminated, quoted or referred to at any time or in
any manner by Client other than to the Client's board of directors/trustees, officers,
employees, representatives, attorneys, and other agents who have a need to receive such
information, except upon HP's prior written consent. Without limiting the foregoing, the
Client shall not (and shall not authorize any other individual or entity to) use HP's name or
make available to third parties any information created, prepared, or compiled by HP under
this Agreement for any reason, including obtaining or extending credit, offering or setting
securities or other assets, or in any representations to third parties without HP's prior written
consent. It is also expressly agreed that notwithstanding the above restrictions upon the
Client's dissemination and use of information and work product, HP shall have no

Gabriel Holdings, LLC et. al.
April 1, 2020
P a g e | 7

_____

responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Client concerning any information created, prepared, or compiled, in whole or in part, by HP pursuant to this Agreement, which may be disclosed only after prior written approval by HP or as required by applicable laws, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to HP's engagement under this Agreement in required public filings or court documents.

5. <u>**TERMINATION:**</u>

Unless otherwise specified in this Agreement, the engagement can be terminated by either party effective upon 21 days written notice to the other party, provided that upon any such termination by the Client, the Client pays to HP all amounts due and owing hereunder prior to the effective date of termination.  The terms of this Exhibit "A" shall survive any termination or expiration of this Agreement or the engagement.

6. **INDEPENDENT CONTRACTOR:**

    A.    HP is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any HP Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Client, unless expressly agreed to in a writing signed by both Client and HP. As an independent contractor, HP will have exclusive control over the management and operation of HP, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in this Agreement, HP personnel that provide services to the Client under this Agreement may also provide services to other HP clients (past, present or future) in connection with unrelated matters. In addition, HP may utilize the services of qualified project employers, to assist HP with its performance of its services pursuant to this Agreement.

    B.    In rendering its services to Client hereunder, HP is not assuming any responsibility for the Client's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any transaction.  HP shall not make decisions on behalf of or instead of the Client.  The management and decision making of the Client shall, at all times, remain with the independent directors or managers of the Client (with respect to all entities comprising the Client, other than Gabriel Investment Group, Inc.) or, with respect to Gabriel Investment Group, Inc., the board of directors of Gabriel Investment Group, Inc. and its equity owners, in each case in accordance with their independent business judgment.  HP and Client confirm that each will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

7. **NO FIDUCIARY RELATIONSHIP:**

Nothing in this Agreement is intended to create, or shall be deemed or construed to create

Gabriel Holdings, LLC et. al.
April 1, 2020
P a g e | 8

a fiduciary relationship between: (a) the Client, including without limitation, the Client's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand: and (b) HP, HP's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of HP or HP affiliates (all of the foregoing in this subpart (b) collectively, the "HP Parties," and each a "HP Party") on the other hand.

8. **LIMITATION OF LIABILITY:**
Even if the remedies provided for in this agreement fail of their essential purpose and even if HP has been advised of the possibility of the following damages, in no event shall any HP Party be liable to Client or to any other person or entity, under any equitable, common law, contractual, statutory, or other theory, for (i) any incidental, special, consequential, indirect, or punitive damages, (ii) any damages measured by lost profits, opportunities or goodwill, or (iii) any damages in excess of the fees paid by Client to HP during the six-month period immediately preceding HP's actual receipt of Client's first express, written assertion of such claim.

9. **INDEMNIFICATION:**
As part of the consideration for the agreement of HP to furnish its services pursuant to this Agreement, Client agrees to indemnify and hold harmless the HP Parties to the fullest extent lawful from any and all claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with or related to this engagement, including, without limitation. any and all of such HP Parties' reasonable expenses incurred in connection with investigating, preparing, defending or settling any action or claim arising from or relating to such liabilities, including all of such HP Parties' reasonable legal fees and expenses: provided, however, that Client shall not be responsible for any losses, claims, damages, liabilities or expenses of any HP Party to the extent, and only to the extent, that it is finally judicially determined that they are due primarily to such HP Party's gross negligence or willful misconduct. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability Client may have to HP at common law or otherwise, (ii) shall survive the expiration of HP's engagement hereunder, (iii) shall apply to any modification of HP's engagement hereunder and shall remain in full force and effect following the completion or termination of the engagement as amended or modified, and (iv) shall be binding on any successor or assign of Client and its successors or assigns.

10. **NON-SOLICITATION:**
Unless otherwise set forth in this Agreement, during the term of this engagement and for 12 months thereafter, Client and any of its affiliated companies agree not to solicit any HP Party without HP's prior written consent, and HP agrees not to solicit Client's employees without Client's prior written consent. If an employee (or in the case of HP, any HP Party) of one party (the "First Employer") becomes employed or contracted by the other party (the "Second Employer"), and 180 days have not elapsed since such employee (or Affiliate) was last employed by or provided services as a contractor to the First Employer, then the Second Employer shall be conclusively deemed to have breached its obligations under this section. As liquidated damages for such a breach, the Second Employer shall pay the First

Gabriel Holdings, LLC et. al.
April 1, 2020
P a g e | 9

_____

Employer an amount equal to forty percent (40%) of the total cash compensation reasonably anticipated to be paid by the Second Employer to such employee or contractor during the first year of such employment or contract relationship with the Second Employer. For purposes of this calculation, the parties agree that such payment shall be due within 30 days after such employment or contract relationship commences, and to conclusively assume that all base salary, discretionary bonuses (in the targeted amount), contract payments (based on reasonable estimates of hours worked or jobs performed), commissions (based on reasonable performance), and other amounts are earned and paid for one entire year, without regard to whether any component of such compensation is discretionary or whether such employment or contract relationship is at will or for a definite term less than one year.

11. **TRADEMARK LICENSE**:
HP shall have the right, during the term of this agreement and thereafter, to disclose Client's relationship as a Client or former Client of HP and to use Client's trade names, trademarks, service marks and logos (collectively, "Client's Marks") for that purpose in any medium. HP shall use Client's Marks in accordance with any commercially reasonable written trademark usage policies provided by Client to HP from time to time. Nothing herein shall affect Client's ownership of Client's Marks.

12. **GOVERNING LAW; VENUE; ARBITRATION; ATTORNEY'S FEES**:
THIS AGREEMENT AND ANY CLAIM RELATED DIRECTLY OR INDIRECTLY TO THIS AGREEMENT (INCLUDING ANY CLAIM CONCERNING ADVICE PROVIDED PURSUANT TO THIS AGREEMENT) SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCEPT ITS CONFLICTS OF LAWS PRINCIPLES). THE EXCLUSIVE VENUE TO RESOLVE ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT OR THE SERVICES PROVIDED OR TO BE PROVIDED BY HP TO CLIENT SHALL LIE IN TRAVIS COUNTY, TEXAS OR THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS. HP AND CLIENT HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH OR AS A RESULT OF THE ENGAGEMENT PROVIDED FOR IN THIS AGREEMENT.

13. **MISCELLANEOUS**:
If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction to be void, invalid, or otherwise unenforceable, in whole or part, the remaining terms, provisions, covenants and restrictions contained in this Agreement shall remain in effect. Amounts past due under this Agreement shall accrue interest at the rate of 18% per year, or the maximum rate allowed by law, whichever is less. Client shall pay (or if HP pays, reimburse HP for) any applicable sales, use or similar tax imposed in connection with any sale of goods or services by HP to Client. This Agreement supersedes any prior agreement, understanding, or representation between HP and Client, and can only be modified by a written document signed by both HP and Client, and approved by the Bankruptcy Court, if applicable.

Gabriel Holdings, LLC et. al.
April 1, 2020
P a g e | 10

[End of Agreement]

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| GABRIEL INVESTMENT GROUP, INC., ET AL., | § | BANKRUPTCY NO. 19-52298-RBK |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |

ORDER ON APPLICATION TO EMPLOY WILLIAM R. PATTERSON OF
HMP ADVISORY HOLDINGS, LLC, DBA HARNEY PARTNERS,
AS THE CHIEF RESTRUCTURING OFFICER TO DEBTORS

Came on for consideration the *Application to Employ William R. Patterson of HMP Advisory Holdings, LLC, dba Harney Partners, as the Chief Restructuring Officer to Debtors* (the "**Application**").[1]  Based on the representations made in the Application and in the supporting *Declaration of William R. Patterson in Support of Application to Employ HMP Advisory Holdings, LLC, dba Harney Partners, as the Chief Restructuring Officer to Debtors* (the "**Patterson Declaration**"), the Court finds that (i) it has jurisdiction over the matters raised in the Application

---

[1] Capitalized terms unless otherwise defined herein shall have the meaning as ascribed to them in the Application.

{00459373}

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Application approving the employment of William R. Patterson of HMP Advisory Holdings, LLC, dba Harney Partners (the "**Firm**"), as the Chief Restructuring Officer ("**CRO**") is in the best interest of the Debtors, their estates and the creditors; (iv) the Firm holds no interest adverse to the Estates and is a disinterested person under 11 U.S.C. § 101(4); (v) proper and adequate notice of the Application has been given and no further notice is necessary; (vi) all objections to the Application have been resolved by this Order or are overruled in their entirety; (vii) the Firm is qualified to be employed as an accountant to Debtors in these Cases pursuant to sections 327 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016; and (viii) based upon the record herein, after due deliberation, good and sufficient cause exists for the granting of the Application in all respects.

**IT IS, THEREFORE, ORDERED** that the Application is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to section 327(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to employ William R. Patterson as CRO, effective as of April 1, 2020, in accordance with and the terms described in the Application, the engagement letter and this Order, and to perform the services described therein.

**IT IS FURTHER ORDERED** that if any supplemental declarations or affidavits are filed and served after entry of this Order, absent any objections within 21 days after the filing and service of such supplemental declarations or affidavits, the Firm's employment shall continue as authorized pursuant to this Order.

**IT IS FURTHER ORDERED** that the Firm shall be compensated upon appropriate application in accordance with Bankruptcy Code sections 327, 330 and 331, the Bankruptcy Rules, and the Bankruptcy Local Rules.

**IT IS FURTHER ORDERED** that, notwithstanding anything to the contrary herein, any use of cash collateral to fund payments made to the CRO shall be made only pursuant to the cash collateral budget approved by the Court or as otherwise provided by subsequent Court orders or a confirmed plan.

**IT IS FURTHER ORDERED** that:

a) The Firm shall not act in any other capacity (for example, and without limitation, as financial advisor to the Debtors, as a claims agent/claims administrator or investor/acquirer) in connection with the above-captioned cases without further order of the Court.

b) In the event the Debtors seek to have personnel of the Firm assume executive officer positions that are different than the position disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

c) The Firm shall file with the Court with copies to the United States Trustee ("U.S. Trustee"), PNC Bank and all official committees a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed. The Firm's invoices submitted

pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals (Docket No. 105) will constitute compliance with this reporting obligation.

d) No principal, employee or independent contractor of the Firm and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

e) The Firm shall file with the Court, and provide notice to the U.S. Trustee, all official committees, and PNC Bank, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed. The Firm's invoices submitted pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals (Docket No. 105) will constitute compliance with this reporting obligation.

{00459373}                               4

f)    Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

g)    The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

h)    There shall be no indemnification of the Firm.

i)    For a period of three years after the conclusion of the engagement, the Firm shall not make any investments in the Debtors or the Reorganized Debtors.

j)    The Firm shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, its/their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

**IT IS FURTHER ORDERED** that to the extent Debtors seek to terminate the Firm's employment, Debtors' will provide not less than twenty-one (21) days' advance written notice of such termination to the Firm, PNC Bank, the Official Committee of Unsecured Creditors and the United States Trustee.

{00459373}                                              5

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #

Submitted by:
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Thomas Rice
Texas State Bar No. 24025613
trice@pulmanlaw.com
Amber L. Fly
Texas State Bar No. 24101761
afly@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**ATTORNEYS FOR DEBTORS**